IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| RAVEN HILL PARTNERS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 5:12-CV-411(MTT) |
| ) | |
| BASF CORPORATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## ORDER

This matter is before the Court on the Defendants' Joint Motion to Dismiss and Transfer (Doc. 9) and the Plaintiff's Motion for Leave to File Excess Pages (Doc. 20). For the reasons discussed below, the Defendants' Motion is **DENIED**, and the Plaintiff's Motion is **GRANTED**.

### I. FACTUAL BACKGROUND

On September 24, 2010, Plaintiff Raven Hill Partners, Inc. entered into a confidentiality agreement with Defendants BASF Corporation and BASF Catalysts, LLC (collectively "BASF"), through their agent Defendant Robert W. Baird & Co., Inc., regarding the possible purchase of BASF's kaolin clay processing operations, known as the "Palau Operations." (Doc. 4 at ¶ 13). As part of the negotiations process, the Defendants provided Raven Hill with a Confidential Information Memorandum ("CIM") detailing the Palau Operations' fiscal condition and several growth opportunities that would be divested in its sale. (Doc. 4 at ¶¶ 14, 16).

On October 8, 2010, Raven Hill submitted an initial bid for the Palau Operations based on the information provided by the Defendants. (Doc. 4 at ¶ 17). Raven Hill

representatives met with members of BASF's senior management on November 17. At the meeting, BASF "indicated" that its water barrier technology would be included in the sale and that BASF would retain, or have the ability to license back, technology related to its catalyst business. (Doc. 4 at ¶¶ 18-19).

On March 15, 2011, Raven Hill and BASF executed an Expense Reimbursement Letter (the "Letter") because of the substantial due diligence costs being incurred by Raven Hill. (Doc. 4 at ¶¶ 20-21). The Letter provided that BASF would reimburse Raven Hill for its reasonable costs, up to $1,250,000, if the transaction was not completed because BASF either abandoned it or provided incorrect information to Ravel Hill. (Doc. 4 at ¶ 20). To be reimbursed for the full amount of due diligence expenses, the Letter required Raven Hill to agree to a purchase price of $222.7 million. (Doc. 4 at ¶ 21). In the event that Raven Hill proposed a purchase price less than $222.7 million, reimbursable expenses were capped at $833,000. (Doc. 4-3 at 3). Raven Hill continued to conduct due diligence in reliance on the Letter.

In April 2011, an arc flash explosion occurred at another BASF-owned kaolin facility, implicating the possibility of explosions at the Palau Operations. (Doc. 4 at ¶ 27). Raven Hill alleges that it made multiple attempts to discuss the condition and safety of the Palau Operations with its management during April 2011, but these efforts were thwarted by BASF. (Doc. 4 at ¶¶ 28-29). Raven Hill also alleges that BASF affirmed that Raven Hill would receive exclusive ownership and use of the water barrier technology during several meetings in April 2011. (Doc. 4 at ¶¶ 25, 30). On October 5, the Defendants finally disclosed the arc flash explosion and that BASF intended to license the water barrier technology back free of royalty. (Doc. 4 at 10 n.5).

Based on these discoveries and a change in the negotiating process, Raven Hill proposed new terms for the purchase on November 13, 2011. (Doc. 4 at ¶ 35). On November 23, BASF made a counterproposal that it claimed was a final offer. (Doc. 4 at ¶ 36). Raven Hill alleges that BASF's final offer was essentially "an attempt to fabricate Raven Hill's abandonment of the deal in bad faith" because it imposed financing commitments on such short notice that it was "effectively impossible" to accept the offer. (Doc. 4 at 12 n.7). Raven Hill nevertheless accepted the proposed price but requested concessions on several other issues. On December 5, BASF informed Raven Hill that its request for different terms constituted a rejection of BASF's offer and an election by Raven Hill not to proceed with the transaction. (Doc. 4 at ¶ 38).

Despite Raven Hill's "rejection" of BASF's "final offer," BASF continued negotiations with Raven Hill until February 17, 2012, when it permanently abandoned the transaction. (Doc. 4 at ¶¶ 40, 43). On February 23, Raven Hill submitted its request for reimbursement pursuant to the Letter. However, BASF rejected Raven Hill's request, asserting that Raven Hill had abandoned the transaction and was, therefore, not entitled to reimbursement. (Doc. 4 at ¶ 46).

## II. DISCUSSION

### A. Motion to Transfer

The Defendants argue that this case should be dismissed or transferred to the District of New Jersey under the doctrine of *forum non conveniens.* However, with the possible exception of a motion to dismiss based on a contractual forum selection clause, dismissal is not appropriate when transfer to another domestic forum is available. *Cont'l Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp. 2d 1296, 1312 (S.D. Ala. 2012); *see also Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1333 (11th

Cir. 2011) (finding that a forum selection clause may be the basis for transfer pursuant to 28 U.S.C. § 1404(a) or for dismissal pursuant to Rule 12(b)(3)).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (internal quotations and citation omitted). Courts weigh several factors in determining whether the plaintiff's choice is not entitled to deference.[1]

Although the Defendants argue these factors weigh in favor of transfer, none of the reasons cited by the Defendants are compelling. For example, the operative facts occurred in a number of jurisdictions, but the locus of the dispute is within this jurisdiction. Accordingly, transfer of this action pursuant to 28 U.S.C. § 1404(a) is inappropriate.

### B. Motion to Dismiss

#### 1. Standard of Review

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain specific factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light

---

[1] *See, e.g.*, *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005) (citation omitted) ("Section 1404 factors include (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.").

most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (quotation marks and citation omitted). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

## 2. Bad Faith in Performance and Negotiation of Contract

The Defendants argue that "[p]arties negotiating to enter into a potential contract do not have an implied duty to negotiate in good faith absent an express agreement to do so" and that Raven Hill has failed to allege the existence of any such agreement. (Doc. 9-1 at 9). Even if such an obligation could be implied in the Letter, BASF continues, "Raven Hill's bad faith claim also fails because it lacks sufficient allegation of improper motive" and mere dissatisfaction with the terms of BASF's counteroffer and BASF's "discretionary decision" to make the counteroffer a final offer does not rise to the level of an improper motive. (Doc. 9-1 at 10).

"An implied covenant of good faith and fair dealing is present in all contracts governed by New Jersey law."[2] *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 169-70 (3d Cir. 2001). A breach of the implied covenant occurs when a party engages in conduct that frustrates the other party's bargained-for-benefit and does not

---

[2] The Parties agree that the Letter is governed by New Jersey law.

require a breach of the contract's express terms. *Coldwell Banker Real Estate, LLC v. Plummer & Assocs., Inc.*, 2009 WL 3230840, at *3 (D.N.J.). A party can also breach the implied covenant by "[acting] in bad faith or [engaging] in some other form of inequitable conduct in the performance of a contractual obligation." *O'Brien v. Biobanc USA*, 2011 WL 2532465, at *4 (D.N.J.) (internal quotations and citation omitted). "An essential element of any claim for breach of the covenant of good faith and fair dealing is proof of 'bad motive or intention.'" *Id.* (internal citation omitted).

While parties may not have an obligation to negotiate in good faith prior to entering into an agreement, the Defendants have acknowledged that the Parties' Letter constitutes a binding contract. Raven Hill does not claim that the Defendants acted in bad faith in negotiating the consummation of the final transaction. Rather, Raven Hill claims that the Defendants conducted bad faith negotiations in both the formation and the performance of the Letter by tying the reimbursement to a purchase price based on its misrepresentations and by fabricating an abandonment of the transaction by Raven Hill to avoid reimbursement. Raven Hill has also pled that the Defendants' "bad motive" was to lure Raven Hill into further negotiations so that the Defendants could use Raven Hill's interest in the Palau Operations as leverage to secure a better offer from other bidders. (Doc. 4 at ¶ 60).

Accordingly, Raven Hill has sufficiently alleged a claim for breach of the implied covenant of good faith and fair dealing.

### 3. Fraud Claims

The Defendants argue that Raven Hill's fraud claims fail for several reasons. First, the Defendants contend that Raven Hill has failed to plead its fraud claims with particularity as required by Fed. R. Civ. P. 9(b) because Raven Hill does not identify the

persons making the alleged misrepresentations nor does Raven Hill explain why the statements were fraudulent.  Second, the Defendants argue that the alleged misrepresentations could not have been material or caused damages if Raven Hill was willing to continue with the transaction after uncovering the truth about the Defendants' representations.  Third, the Defendants assert that Raven Hill has not adequately alleged that the Defendants' statements were known to be false at the time they were made because they related to future events.  Finally, the Defendants argue that Raven Hill cannot plead reasonable reliance because it investigated the representations during due diligence, the CIM contained non-reliance disclaimer language pertaining to the CIM-related representations, and some of the representations occurred after the execution of the Letter.

"In New Jersey, a successful claim of fraud requires proof of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Indian Brand Farms v. Novartis Crop Prot. Inc.*, 617 F.3d 207, 218 (3d Cir. 2010) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350, 367 (1997)).

Raven Hill bases its fraud claims on four alleged material misrepresentations: (1) BASF's management intended to make $9,000,000 in capital expenditures during 2011; (2) the Palau Operations' impound ponds required no further capital expenditures; (3) Raven Hill would have exclusive use and ownership over the water barrier technology; and (4) the Palau Operations were safe.  Raven Hill also alleges that the Defendants knew the representations were false and that the Defendants intended for Raven Hill to rely on the representations to continue negotiating the deal and to execute the Letter.

Raven Hill concludes that it reasonably relied on the misrepresentations by continuing to conduct due diligence, and it incurred damages as a result.

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Allegations of fraud subject to Rule 9(b)'s requirements "'must include facts as to time, place, and substance of the [Defendants'] alleged fraud.'" *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir. 2002) (quoting *U.S. ex rel. Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562, 566-67 (11th Cir. 1994)). Here, Raven Hill's Complaint setting forth specific dates of the alleged fraud, where the alleged fraud occurred, the substance of the Defendants' alleged fraud, and the Defendants' representatives who engaged in the alleged fraud, clearly complies with Rule 9(b).

The Defendants' second and third arguments are without merit. The Court cannot hold as a matter of law that the misrepresentations were not material simply because Raven Hill continued to engage in negotiations. Further, the alleged misrepresentations do not pertain solely to future events.

Finally, Raven Hill is not barred from pleading reasonable reliance merely because it engaged in due diligence. *See Limpit Acquisition, LLC v. Fed. Fin. Grp., Inc.*, 2006 WL 288076, at * 2-3 (D.N.J.) (quoting *Byrne v. Weichert Realtors*, 290 N.J. Super. 126, 137, 675 A.2d 235, 241 (1996)) ("[T]he fact that the plaintiffs did an independent investigation 'does not resolve the question of whether plaintiffs relied on the result of this investigation.'"). Nor is Raven Hill barred from pleading reliance based on the Defendants' other arguments. At oral argument, it became clear that the Defendants'

arguments against Raven Hill's fraud claims are primarily factual.  The Court is not in a position to decide those issues at this time.

Accordingly, Raven Hill has sufficiently pled claims for fraud, and Raven Hill, therefore, maintain its claim for punitive damages.

### C. Motion for Leave to File Excess Pages

The Defendants argue that the Court should disregard Raven Hill's response to the Defendants' Motion in its entirety or, at least, the pages in excess of Local Rule 7.4's page limit.  Although Raven Hill has moved belatedly for leave to exceed the limitation, the Defendants have not shown that they have been prejudiced by the five pages in excess, and the Court finds no other reason to deny the Motion.

### III. CONCLUSION

For the foregoing reasons, the Defendants' Joint Motion to Dismiss and Transfer (Doc. 9) is **DENIED**, and the Plaintiff's Motion for Leave to File Excess Pages (Doc. 20) is **GRANTED**.

**SO ORDERED**, this the 6th day of March, 2013.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT
